SVK

**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| David Anthony Stokes,           )<br>                                           )<br>         Plaintiff,                       )<br>                                           )<br>vs.                                         )<br>                                           )<br>                                           )<br>Joseph M. Arpaio, et al.,          )<br>                                           )<br>         Defendants.                  )<br>                                           )<br>_____) | No. CV 04-2845-PHX-DGC (MEA)<br><br>**ORDER** |

Plaintiff David Anthony Stokes, who is confined in the Arizona State Prison Complex in Buckeye, Arizona, filed this *pro se* civil rights action against Joseph M. Arpaio, Sheriff of Maricopa County, and Fulton Brock, Don Stapley, Andrew Kunasek, Max Wilson, and Mary Rose Garrido-Wilcox, members of the Maricopa County Board of Supervisors (BOS). Defendants move for summary judgment.[1] (Doc. #64.) The motion is fully briefed. (Doc. ##76, 78.) The Court will grant the motion.

**I.     Background**

In his First Amended Complaint, Plaintiff alleged that while he was an inmate serving a term of imprisonment for a conviction, he was returned to Maricopa County Jail on new charges. He alleged that while confined in the Maricopa County Towers Jail from sometime in 2004 to sometime in 2005, he was subjected to conditions of confinement that violated his

---

[1] The Court issued a Notice pursuant to Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*). (Doc. #66.)

constitutional rights. In paragraphs 17 through 20, Plaintiff complained that his Eighth Amendment rights were violated by overcrowding, lack of sufficient toilets, and unsanitary conditions; failure to provide access to a toilet for a 48-hour period, which aggravated Plaintiff's diverticulitis; and repeated failure to provide him his medically prescribed diet. (Doc. #43 at 6-7.) In paragraphs 25 through 30, he complained that his Eighth Amendment rights were violated by Arpaio's policy and practice of failing to provide sufficient cleaning supplies, reduce overcrowding, ensure proper medical treatment, and correct long-standing living conditions. (Id. at 8.) He alleged that Arpaio "knew or should have known" of the long-standing conditions and that the BOS failed to provide adequate funding to Arpaio to relieve the overcrowding. (Id. at 9.) Plaintiff asserted similar claims under the Fourteenth Amendment in paragraphs 21-24 and 31-34. The Fourteenth Amendment claims were dismissed. (Doc. #42 at 5.) The Court directed Defendants to answer the Eighth Amendment claims. (Id.)

Defendants now move for summary judgment. They argue that (1) Defendants cannot be held vicariously liable for actions of their employees and (2) Plaintiff cannot satisfy either the objective or subjective requirement of the deliberate indifference standard with regard to the claims of (a) overcrowding, (b) failure to provide a medically prescribed diet, or (c) lack of a working toilet for 48 hours. Plaintiff responds, arguing that (1) his claim of unsanitary living conditions is supported by his grievances and responses thereto, medical records, and witness statements; (2) as to overcrowding, Defendants are not in compliance with the requirements of Hart v. MCSO;[2] (3) Defendants improperly try to place the blame on Plaintiff regarding his claim of no working toilet for 48 hours; (4) the staph infection outbreak was compounded by the failure to isolate infected individuals; and (5) Defendants failed to provide a medically prescribed diet.

---

[2] The Court assumes that Plaintiff is referring to the Amended Judgment of the class action Hart v. Hill, No. CV 77-0479-PHX-EHC (MS) (D. Ariz.).

- 2 -

## II. Legal Standards

### A. Summary Judgment

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The evidence must be such that a reasonable jury could return a verdict for the non-moving party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Under Rule 56(e), the non-moving party must "set out specific facts showing a genuine issue for trial" and may not "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Rule 56(c) mandates the entry of summary judgment, however, against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. Celotex, 477 U.S. at 322-23.

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any. See Fed. R. Civ. P. 56(c). At summary judgment, the judge's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. But if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 249-50.

**B.     Conditions of Confinement**

A convicted inmate's challenge to conditions of confinement is evaluated under the Eighth Amendment, even if he is confined in a county jail with pre-trial detainees. Anderson v. Kern, 45 F.3d 1310, 1312-13 (9th Cir. 1995) (citing Redman v. County of San Diego, 942 F.2d 1435, 1442 (9th Cir. 1991)). The Eighth Amendment prohibits the unnecessary and wanton infliction of pain. Gregg v. Georgia, 428 U.S. 153, 173 (1976). Under the Eighth Amendment, the relevant inquiry is (1) whether the challenged condition constitutes an infliction of pain or a deprivation of basic human needs and, if so, (2) whether defendants acted with the requisite culpable intent. Anderson, 45 F.3d at 1313 (citing Farmer v. Brennan, 511 U.S. 825 (1994). To prevail on an unconstitutional conditions claim under an Eighth Amendment standard of care, a plaintiff, whether a pretrial detainee or a convicted individual, must show that defendants were "deliberately indifferent" to the alleged constitutional violations. Redman, 942 F.2d at 1443; Wilson v. Seiter, 501 U.S. 294, 302-03 (1991).

To comply with the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must be provided with "adequate food, clothing, shelter, sanitation, medical care, and personal safety." Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred." Johnson v. Lewis, 217 F. 3d 726, 731 (9th Cir. 2000). This does not mean that federal courts can or should interfere whenever prisoners are inconvenienced or suffer *de minimis* injuries. See Bell v. Wolfish, 441 U.S. 520, 539 n.21 (1979) (noting that a *de minimis* level of imposition does not rise to a constitutional violation). The Eighth Amendment does not mandate comfortable

prisons. Rhodes v. Chapman, 452 U.S. 337, 349 (1981) (finding that double-celling and housing inmates beyond the prison capacity did not violate the Eighth Amendment). The deprivation must be sufficiently serious. Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005) (citing Wilson, 501 U.S. at 298. This is an objective test. See Farmer, 511 U.S. at 834.

In addition to the objective requirement of a sufficiently serious deprivation, the defendant official must have a sufficiently culpable state of mind; that is, he must be deliberately indifferent. Id. To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must actually draw the inference. Id. at 837. Thus, an inmate must satisfy a subjective requirement. Id. 838. The inmate need not show that the defendant acted or failed to act believing that harm would actually befall the inmate; "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842.

Whether the official had the necessary knowledge is a question of fact; it may be demonstrated in the usual ways, including inferences drawn from circumstantial evidence, "and a fact-finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id.

### III.  Motion for Summary Judgment

In support of their motion, Defendants submit a Statement of Facts (Doc. #65 DSOF); the affidavits of Captain Karowski and Dietician K.S. Reddy (id., Ex. A, Karowski Aff.; Ex. D, Reddy Aff.); Correctional Health Services Records (id., Ex. B); "CMLC/Stokes Report" (id., Ex. C); grievances and appeals (id. Ex. E-I); and Maricopa County Justice System Annual Activities Report Fiscal years 2004-05 and 2005-06 (id. Ex. J-K). They also submit a Statement of Supplemental Facts. (Doc. #77.)

Plaintiff submits a Statement of Facts (Doc. #78, Ex. 1, PSOF); a Statement of Disputed Factual Issues (id.); Brief in Opposition (id.); the declaration of John Rogers (id., Ex. 2); the declaration of Ronna Stokes (id., Ex. 3); the statement of Walter Craft (id.); grievances, medical literature and medical records (id.); Motion to File Amended Complaint

and Objections to Magistrate Report and Recommendation (id. Ex. 4); grievances (id. Ex. 5); excerpts from the Hart v. Hill Amended Judgment (id.); a newspaper article (id. Ex. 6); Memorandum of Points and Authorities (id.); and grievances and medical records regarding Plaintiff's diet (id. Ex. 7).

### A. Overcrowding and Unsanitary Conditions

### 1. Parties' Contentions

Defendants assert that they are obligated under law to house pre-trial detainees and assure their presence in court; therefore, crowding at the jail is an incident of a legitimate governmental purpose, not punishment. (DSOF ¶¶ 2-3.) To alleviate the crowding problem, the County began planning construction of two new jails in 1999; the facilities began housing inmates in April 2005. (Id. ¶ 5.) In 1997, County officials developed a "Jails Master Plan" which included recommendations for capital expenditures and operational changes premised on projected needs through 2020. (Id. ¶ 7.) In 1998 a committee recommended a 15-year plan to expand jail capacity for adults by 5,100; the State authorized the County to place a scaled-down version of the plan before voters, who passed a sales tax. (Id. ¶ 8.) Most of the jail tax revenue went for construction, and the County realized it would need a dedicated revenue source to pay for new detention facilities and their operation, so it returned to the State for authority to request voter continuation of the jail tax, which was again passed. (Id. ¶¶ 10-11.) Jail and facilities construction completed through fiscal 2005 include the Fourth Avenue Jail Complex, Lower Buckeye Jail, and Juvenile Detention and courts. (Id. ¶ 12)

Defendants assert that at the time of Plaintiff's incarceration at the Towers Jail, it was not uncommon to house three inmates per cell and periodically house additional inmates in the day room. (Id. ¶ 14.) Because dayrooms have no toilet facilities, the practice was to designate cell toilets for use by dayroom inmates. (Id. ¶ 15.) Each inmate had his own bunk or temporary "stack-a-bunk." (Id. ¶ 16.) Karowski attests that during his time as Jail Commander, which included the period from May 2004 through March 2005, all inmates were provided access to cleaning products and equipment and that inmates were responsible for

cleaning their pods between weekly cleanings by institutional crews. (Id., Ex. A, Karowski Aff. ¶¶ 1, 16-17.)

Defendants assert that they cannot be held vicariously liable for the actions of their employees. (Doc. #64 at 4.) They also argue that allegations of overcrowding, without more, do not rise to the level of a constitutional violation, and Plaintiff does not allege that the overcrowded conditions so diluted other required services that they fell below the minimum constitutional standard. See Hoptowit, 682 F.2d at 1249. (Doc. #64 at 7.) As to the subjective element of Plaintiff's claim, Defendants argue that there is no factual basis to establish that Defendants intentionally created the conditions or were deliberately indifferent to them because in 1999, the County began a massive jail construction project that brought expanded facilities by 2005. The BOS went to the state legislature several times for authority to ask voters to agree on and to continue the jail tax. (Id. 7-9.)

Plaintiff attaches a copy of his Statement of Facts from the First Amended Complaint. Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (a verified complaint may be used as an affidavit opposing summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence). He alleged that the housing unit was severely overcrowded; Plaintiff was in a two-man cell with three inmates, and other inmates were forced to sleep in the day room. (Doc. #43 ¶ 7.) He also alleged that on several occasions, he observed newly arrived inmates with "what appeared to be obvious, open staph infections wounds which would go untreated, on average, for several days." (Id. ¶ 8.) He asserted that he arrived in good general health and subsequently contracted seven different staph infections during his time at the facility. (Id.)

Plaintiff also submits a Statement of Disputed Factual Issues. (Doc. #78, Ex. 1.) Regarding overcrowding, Plaintiff alleges that it is disputed "[w]hether not alleviating overcrowding at TJF violated the mandate order in § 1983 Hart v. MCSO, . . .[w]hether common practice by TJF and MCSO administrators to triple bunk cells and house inmates in day rooms equated to illegal practice; this violating Hart v. MCSO mandate; [and] . . . [w]hether deliberate indifference qualification is met when nothing beyond planning and

- 7 -

policy implementation is done to correct overcrowding . . . before 2005." (Id.) Regarding sanitation, he contends it is disputed "[w]hether failure to provide cleaning supplies and properly isolate/contain MRSA staph infected inmates met requirement for unsanitary living conditions." (Id.)

He also submits the declarations of Ronna Stokes and John Rogers and the statement of Walter Craft. Rogers asserts that he was also an inmate at the Towers Jail from spring to winter 2004 and he saw new arrivals with open abscesses placed into general population and witnessed conversations between Plaintiff, other inmates and detention officers discussing the need for sanitizing cleansers. (Doc. #78, Ex. 2.) Ms. Stokes attests that she saw lesions on her son's body and the bodies of other inmates and that he complained about poor hygiene at the jail. (Id., Ex. 3, Stokes Decl.) Craft states that he was at the Towers Jail from May 2004 to February 2005 and saw people admitted to general population with open sores, which later proved to be staph infections, and that other inmates would then break out with sores. (Id., Craft Statement.)

Plaintiff argues that Defendants acknowledge the problem of overcrowding and that their claim that new prisons were being built does not resolve the issue at the time in question. (Id., Ex. 1, Brief in Opposition.) He argues that his grievances support his claims of unsanitary conditions, the number of grievances supports the allegation of deliberate indifference, and that his medical records show that he had no prior or subsequent history of such infections, so the only logical conclusion is that the conditions at the jail were responsible for MRSA/staph outbreaks. (Id.) He also argues that "the MRSA/staph outbreak at MCSO jails exploded at an alarming rate and was compounded by MCSO administrators failure to implement or follow existing policies which would have isolated obviously infected individuals" and there was an "explosion of epidemic proportions of staph infections." (Id., Ex. 6, Memorandum of Points and Authorities.)

In their reply, Defendants argue that overcrowding was predicated on the number of inmates sent to the jail by the court system, not the policies or practices of Arpaio, and that because Plaintiff does not dispute the facts in their motion—that Defendants developed long-

range plans for jail facilities—Plaintiff offers no evidence of deliberate indifference. (Doc. #76 at 6-7.) They assert that Hart v. Hill confers no rights on Plaintiff. (Id. at 7.) In addition, they argue that although Plaintiff raises an issue of an alleged "staph epidemic" and that his numerous infections were the result of failure to isolate and screen incoming inmates, he offers no evidence of a staph epidemic and no evidence that any policy or practice of Arpaio was the proximate cause of the staph infection that Plaintiff contracted.[3] (Id. at 11-2.)

**2.     Analysis**

Defendants meet their burden to show no issue of material fact as to overcrowding. They submit evidence that they were aware of the increasing jail population and that to alleviate the crowding problem, the County began construction on two new jail facilities in 2001. These jail facilities began housing inmates in April 2005. It appears that Plaintiff was released shortly before the new jails opened. Defendants assert that the Sheriff is obligated under state law to house pretrial detainees and assure their appearance in court; in other words, that he has no control over the number of inmates in the jail. Thus, they argue that crowding at the jail is an incident of a legitimate governmental purpose, not punishment, and that any overcrowding was not the result of deliberate indifference.

Plaintiff does not rebut Defendants' assertion that crowding is an incident of the legitimate governmental purpose of housing pretrial detainees. Even considering the allegations in Plaintiff's First Amended Complaint, there is nothing to support a finding that the crowding at the jail was done with deliberate indifference to inflict unnecessary and wanton pain. Defendants' effort to build two new jails to relieve overcrowding precludes any finding of deliberate indifference. That they were not built fast enough to benefit Plaintiff does not change the fact that he cannot demonstrate the subjective element of his deliberate

---

[3]The Court will not summarize Defendants' Supplemental Facts because it will not consider them; they were submitted after Plaintiff responded to the motion. See Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996) (citing Black v. TIC Inv. Corp., 900 F.2d 112, 116 (7th Cir. 1990)) ("where new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the [non] movant an opportunity to respond.").

indifference claim. And his reliance on Hart v. Hill is misplaced. Hart creates no "rights, privileges, or immunities secured by the Constitution and laws." See Green v. McKaskle, 788 F.2d 1116, 1122-23 (5th Cir. 1986) (remedial decrees are the means by which unconstitutional conditions are corrected, but they do not create or enlarge constitutional rights). Moreover, the disputed facts noted in Plaintiff's Statement of Factual Disputes are not facts at all. They are legal conclusions and ultimate questions. Simply stating them as facts is not sufficient to defeat summary judgment

Defendants assert that all inmates have access to toilets, inmates are given cleaning supplies, and the cells are cleaned by institutional crews on a weekly basis. Plaintiff disputes that inmates receive cleaning supplies, but not that crews clean the cells weekly or that, generally, the toilets are working. In addition, the specific allegation in the First Amended Complaint is that inmates would enter the facility with open staph-infected wounds, which would go untreated for several days. He asserted that unspecified "policies, practices, and procedures" of Arpaio led to Plaintiff's injuries. He now claims a staph "epidemic" and failure to isolate infected individuals. Although allegations in a complaint may be considered if made on personal knowledge, it is not apparent that Plaintiff or his witnesses would have personal knowledge of other inmates' medical conditions or when they were treated.[4] See Fed. R. Civ. P. 56(e) (an opposing affidavit must be made on personal knowledge and show that the affiant is competent to testify on the matters stated). And Plaintiff now seems to argue that the policy or practice in question is not the failure to treat or delay in treating other inmates, but the failure to isolate them. That claim is beyond the scope of the First Amended Complaint. Even under a liberal notice pleading standard, Plaintiff's new allegations cannot properly be construed as falling within the First Amended Complaint. Under Federal Rule of Civil Procedure 8(a)(2), Defendants must be given fair notice of the claims against them and the grounds upon which they rest, and Plaintiff's First Amended Complaint gave no

---

[4] Notably, although Plaintiff claimed to have contracted seven staph infections himself, Plaintiff did not raise a claim for denial or delay of medical care for his own infections.

notice of the failure-to-isolate allegations. <u>Pickern v. Pier 1 Imports (U.S.), Inc.</u>, 457 F.3d 963, 968-69 (9th Cir. 2006) (citing <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512 (2002)). And as Defendants point out, Plaintiff provides no evidence of a staph epidemic—only conclusory allegations.

Summary judgment is appropriate when a party fails to make a showing sufficient to establish the existence of an element essential to his case and on which he would have the burden of proof at trial. <u>Celotex Corp.</u>, 477 U.S. at 322-23.  App. 2 Div. 1985).  The Court will grant summary judgment on the claims for overcrowding and unsanitary conditions.

**B.     Failure to Provide Medically Prescribed Meals**

**1.     Parties' Contentions**

Defendants assert that on or about June 21, 2004, Plaintiff was taken to Maricopa Medical Center (MMC) for treatment. He was diagnosed with diverticulitis. (DSOF ¶ 19.) On June 29, Correctional Health Services issued a vegetarian diet order for 60 days. The vegetarian diet menu contains about 2300 calories. (<u>Id.</u> ¶ 20.)  On July 13, Plaintiff complained that the diet was causing gastro-intestinal problems. On July 14, Plaintiff was returned to MMC and treated for aggravation of his diverticulitis. (<u>Id.</u> ¶¶ 21-22.) On July 15, Dr. Friedman wrote a Modified Jail Diet order for a renal diet because that was the closest thing the jail has to a low residue diet. (<u>Id.</u> ¶ 23.) Defendants' records reflect that during the period in question, Plaintiff was provided meals that adhered to meal orders and were nutritionally adequate. (<u>Id.</u> ¶ 27.) On September 24, Plaintiff filed a grievance claiming that his meals were being pilfered or switched by inmates. (<u>Id.</u> ¶ 28.)  Once the issue was discussed with various shift commanders, the problem would resolve for the duration of the shift. (<u>Id.</u> ¶ 29.)

Defendants assert that they cannot be held liable vicariously for the actions of their employees. (Doc. #64 at 4.) Defendants also argue that without more, the alleged failure to provide a special diet does not rise to the level of a constitutional violation. (Doc. #64 at 13.) In addition, the record shows that a 60-day vegetarian diet was ordered following Plaintiff's release from the hospital and when Plaintiff complained about the diet, a renal diet was

- 11 -

ordered. (Id.) Plaintiff also admits that when he brought the problem of non-receipt of the meals to the attention of the shift commander, the problem was resolved. (Id.) Defendants also contend that on the days Plaintiff did not get his prescribed diet, he could choose the diverticulitis "friendly" vegetables, fruits, and cereals. (Id. at 14.)

They also argue that their policies and practices do not support a claim of deliberate indifference. (Id. at 15.) Plaintiff was immediately referred to MMC when medical staff learned of Plaintiff's abdominal distress. When he returned, he was placed on a vegetarian diet. When he complained about that diet, it was changed. (Id.) When Plaintiff complained to shift commanders about the meals, the commanders responded by resolving the problem. Defendants assert this is not deliberate indifference.

Plaintiff alleged in his First Amended Complaint that he never received the low residue diet and that "on numerous occasions, dates unspecified, Plaintiff for whatever reason, would not receive his prescribed diet. Plaintiff would discuss the matter with various shift commanders and the problem would resolve for the duration that the sift commanders took an active interest it. Once attention was diverted though, the issue would reappear." In his Statement of Disputed Facts, Plaintiff asserts that it is disputed "[w]hether deliberate indifference, inferred or otherwise, is met concerning medical diet claims."

In their reply, Defendants assert that there is no evidence of a policy or practice to deny Plaintiff a special diet. (Doc. #76 at 7.) They argue that it is uncontroverted that the policy was to employ a skilled nutritionist, to provide medical care, to refer Plaintiff to MMC for assessment, and to place Plaintiff on a renal diet. (Id. at 7-8.) Defendants argue that Arpaio cannot be vicariously liable when inmates take Plaintiff's food or the shift commanders' attention is diverted. (Id. at 9.)

**2.     Analysis**

Defendants have met their burden of showing that there was no policy or practice to deny Plaintiff a special diet. They provide evidence that they employ a nutritionist, that orders were written for Plaintiff's special diet, and that his diet was changed when he

complained about it. Plaintiff does not dispute these facts.[5] Although he asserts that he did not always get his special meals, that is insufficient to demonstrate that a policy or practice of Defendants was the source of any problem. Although liability may be imposed on the county if a plaintiff establishes that his injuries were inflicted pursuant to an official county policy or custom, Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir. 1989) (citations omitted), Plaintiff has offered no evidence of a policy or custom to deny him his special diet. And as Defendants argue, they are not vicariously liable for the actions of employees. There is no *respondeat superior* liability under § 1983, and, therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability. Monell v. New York City Department of Social Services, 436 U.S. 658, 691-92 (1978); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). To demonstrate a valid claim under § 1983, a plaintiff must show that he suffered a specific injury as a result of specific conduct of the defendant and show an affirmative link between the injury and the conduct of that defendant See Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976). Plaintiff has not made this showing. The Court will grant summary judgment on the claim for denial of a special diet.

### C.   Failure to Provide Toilet Facilities for 48 Hours

#### 1.   Parties Contentions

On or about October 8, water at the Towers Jail was cut off due to a broken water main caused by an outside contractor working on the expansion of jail facilities. (DSOF ¶ 30.) Upon learning of the break, jail staff initially posted a memorandum stating that the water would be off for about 4 hours, based on information from the contractors. (Id. ¶ 32) Repairs were not, in fact, completed for about 48 hours. (Id. ¶ 34.) On October 9, Plaintiff filed a grievance complaining about not being able to access a working toilet. (Id. ¶ 33.)

Defendants argue that they cannot be held liable vicariously for the actions of their employees and that isolated or temporary conditions do not rise to the level of constitutional

---

[5]Again, his Statement of Disputed Factual Issues contains no facts, only legal conclusions.

- 13 -

violations. (Doc. #64 at 4,17.) They also assert that because Plaintiff makes no allegation that he conveyed to anyone his particular distress resulting from his medical condition, Plaintiff cannot establish that Defendants had the necessary culpable state of mind regarding his situation. (Id. at 17-8.)

In his First Amended Complaint, Plaintiff alleged that during the 48 hours when the water main was being repaired, "[n]o provisions were [made] to allow inmates access to working toilets or 'porta-pottys.'" (Doc. #43 ¶ 19.) In his Statement of Disputed Factual Issues, Plaintiff states that it is disputed "[w]hether deliberate indifference, inferred or otherwise, is met concerning failure to provide alternative relief facility (toilet) during main breakage." (Doc. #78, Ex.1.) Rogers asserts that he and Plaintiff made several requests for alternative toilet facilities. (Id., Ex. 1, Rogers Decl.) And Plaintiff submits at least one grievance about the toilets that was filed during the 48-hour period, and asserts that there was no officer who was not aware of Plaintiff's serious medical needs. (Id.,Ex. 5; Ex.1, Brief in Opposition.) He argues that Defendants try to blame Plaintiff for not asking to be moved and suggests that officers never made the availability of that option known to Plaintiff. (Id., Brief in Opposition)

In their reply, Defendants argue that Plaintiff offers no evidence that the water main break was the proximate cause of his injury. (Doc. #76 at 10.) They maintain that Arpaio was not deliberately indifferent because the water main was repaired within 48 hours and flushing toilets were provided during the period. (Id.)

### 2.     **Analysis**

Defendants have met their burden of showing that they were not deliberately indifferent to Plaintiff's needs for the 48-hour period when the water main broke. They allege that inmates were not denied working toilet facilities for 48 hours. This fact is disputed by Plaintiff, who asserts that he did not have access to a working toilet. Even assuming that the situation rose to the level of a constitutional deprivation, see Johnson, 217 F.3d at 732-33, as with Plaintiff's claim for denial of a special diet, Plaintiff offers no evidence of a policy or custom to deny him toilet facilities. Official county policy may only be set by an official with

"final policymaking authority." <u>Thompson</u>, 885 F.2d at 443 (citing <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481-83 (1986) (plurality opinion)). In Arizona, the responsibility of operating jails is placed by law upon the Sheriff. <u>See</u> A.R.S.§ 11-441(A)(5); A.R.S. § 31-101. Plaintiff does not dispute that this was an isolated incident related to a water main break, that repairs took longer than officials expected, or that he had access to a toilet, albeit non-working. He offers no evidence that Arpaio or the BOS established a policy with regard to the toilet facilities to be used by inmates during this brief period. Plaintiff's assertions that officers knew of his particular medical problems and that he filed a grievance within the 48-hour period are irrelevant to the liability of the named Defendants. Arpaio and the BOS are not vicariously liable for the actions of employees even if those actions violated Plaintiff's rights. <u>See</u> <u>Monell,</u> 436 U.S. at 691-92; <u>Taylor</u>, 880 F.2d at 1045. The Court will grant summary judgment on this claim.

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. #64) is **granted,** and the action is terminated. The Clerk of Court shall enter judgment accordingly.

DATED this 6th day of August, 2008.

_David G. Campbell_
David G. Campbell
United States District Judge

- 15 -